**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID A. WATSON,

        Petitioner,                        Case Number: 04-72603

v.                                         HON. LAWRENCE P. ZATKOFF

PAUL H. RENICO,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner David A. Watson has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, challenges his convictions for first-degree felony murder, kidnapping, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's convictions arise out of the kidnapping and murder of Carl Simpson in June 1998.

Rynell Davis was originally charged with first-degree murder as a co-defendant. He pleaded guilty to second-degree murder, received a sentence agreement of fifteen to twenty-five years imprisonment and agreed to testify at Petitioner's trial. He testified that Petitioner allowed him to stay at a home in Detroit, which was known as "The Spot," in exchange for him selling drugs for Petitioner. At one point in June 1998, some drugs and a gun were stolen from The Spot. Petitioner suspected that Simpson had stolen the gun. While driving around in Petitioner's Pontiac Grand Am,

Petitioner and Davis saw Simpson in a Coney Island restaurant. Petitioner entered the restaurant with an AK-47, Davis with a baseball bat. They ordered Simpson out of the restaurant and Petitioner placed Simpson in the trunk of his vehicle. Davis testified that Petitioner drove back to The Spot, where Petitioner, Davis and another man beat Simpson with the baseball bat. After the beating, Simpson was again placed in the trunk of Petitioner's vehicle. Simpson was permitted to place a phone call from a pay phone to a relative. According to Davis' testimony, Simpson was then placed back in the trunk of Petitioner's vehicle. Davis never saw Simpson again.

Antonio Jones testified that he lived across the street from The Spot. On the afternoon of June 11, 1998, he was at the Coney Island restaurant when Petitioner and Davis entered carrying an AK-47 and baseball bat. Jones testified that Simpson dove under a table, but Davis dragged him from under the table, took him outside and Davis and Petitioner threw Simpson in the trunk of the car.

Cathy Austin testified that she was Petitioner's girlfriend and that she owned a black Grand Am, which she regularly permitted Petitioner to drive. She testified that Petitioner told her that he was going to beat up someone named "Pookey" because Pookey had stolen a gun from him. She further testified that police who interrogated her threatened to take her children from her.

On June 28, 1998, police discovered a burnt vehicle at Taft School in Detroit. The vehicle was a stolen Buick Riviera and contained what appeared to be a severely burned corpse. Based upon DNA testing of the bones and a DNA sample from Simpson's mother, forensic anthropologist Julie Saul concluded that there was a 99.99% probability that the bones were those of Simpson.

Petitioner testified in his own defense. He testified that, during the time the kidnapping and beating occurred, he was fishing. He stated that he did not know Simpson and was not involved in

the kidnapping.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree felony murder, kidnapping, and felony firearm.  On May 21, 2001, he was sentenced to life imprisonment for the first-degree murder conviction, twenty-five to fifty years imprisonment for the kidnapping conviction, both to be served consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I. David Watson's conviction should be reversed because the prosecution's case was the product of and predicated upon a pattern of illegal police conduct which implicates reliability and due process under the United States Constitution's Fifth and Fourteenth Amendments.
>
> II. David Watson's conviction for felony murder is not based upon sufficient evidence.
>
> III. Prosecutorial misconduct denied David Watson a fair trial and due process of law under the United States Constitution.
>
> IV. Defendant-appellant David Watson was denied effective assistance of counsel where his counsel failed to object to the prosecutor's repeated efforts vouching for Rynell Davis, and this admission can in no honest way be called trial strategy.

The Michigan Court of Appeals affirmed Petitioner's convictions.  People v. Watson, No. 239735 (Mich. Ct. App. July 29, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same issues presented to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  People v. Watson, No. 124620 (Mich. Jan. 27, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following

claims:

> I. Conviction predicated upon a pattern of illegal police conduct which implicates reliability and due process under the Fifth and Fourteenth Amendments.
>
> II. Petitioner's conviction for felony murder is not based upon sufficient evidence.
>
> III. Prosecutorial misconduct denied Petitioner a fair trial and due process.
>
> IV. Ineffective assistance of trial counsel for failing to object to the prosecutorial vouching for witness Davis that was in no way a trial strategy.

### III. Analysis

### A. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28

U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11.

## B. Alleged Illegal Police Conduct

In his first claim for habeas corpus relief, Petitioner alleges that his conviction violated his right to due process because it resulted from illegal police conduct. Petitioner claims that police coerced statements from three witnesses, Antonio Jones, Janet Kendle, and Cathy Austin, and that these coerced statements were used against Petitioner at trial.

The last state court to issue a reasoned opinion in this claim, the Michigan Court of Appeals, held that Petitioner lacked standing to raise this issue. The state court reasoned, in pertinent part:

> Defendant first argues on appeal that the manner in which the police interrogated certain witnesses violated those witnesses' constitutional rights, thereby also violating his right to a fair trial. We disagree. . . .
>
> Constitutional rights are generally personal. People v. Smith, 420 Mich.1, 17; 360 N.W.2d 841 (1984). "They cannot be asserted vicariously, but rather only 'at the instance of one whose own protection was infringed by the search and seizure.'" Id. (citation omitted). "The Fifth Amendment privilege against self-incrimination is a personal privilege and cannot be asserted on behalf of another." People v. Safiedine, 152 Mich. App. 208, 212; 394 N.W.2d 22 (1986). In People v. Jones, 115 Mich. App. 543, 547; 321 N.W.2d 723 (1982); aff'd 419 Mich. 577 (1984), this Court stated, "There is no authority to extend the personal right of a defendant against coerced self-incrimination to include statements made by witnesses." In Jones, the defendant argued that statements made by witnesses were involuntary and coerced. Id. This Court stated that "defendant had no standing to raise the issue of violation of the rights of third parties." Id.
>
> While the police officers' alleged misconduct in holding witnesses for days and threatening witnesses may have violated their rights, defendant does not have standing to raise this issue. Jones, supra at 547. Further, the jury heard the witnesses testify about the methods used by the police to obtain information; therefore, it was for the jury to determine what weight those allegations would have on the witnesses' testimony. People v. Treichel, 229 Mich. 303, 309 200 N.W. 950 (1924).

Watson, slip op. at 1-2.

While the Fifth Amendment right against compelled incrimination is a personal right and may not be asserted on another's behalf, use of another's coerced testimony may violate a defendant's rights under the Due Process Clause. Bradford v. Johnson, 476 F.2d 66 (6th Cir. 1973), *aff'g* 354 F. Supp. 1331 (E. D. Mich. 1972). The Eleventh Circuit Court of Appeals has held that, even where police conduct in questioning a witness is inappropriate, if the conduct is "not so extreme that it violates a sense of fundamental fairness, shocking to universal justice," a defendant's due process rights are not violated where the defendant is able to cross-examine the witness regarding the police contact. Wilcox v. Ford, 813 F.2d 1140, 1149 (11th Cir. 1987) (internal quotation omitted). The opportunity for cross examination allows the jury "adequate opportunity to assess the proper weight to be accorded to the challenged evidence." Id. at 1149. The Court finds the Eleventh Circuit's reasoning persuasive.

In this case, defense counsel was able to cross-examine witnesses regarding their treatment by police. As the Michigan Court of Appeals held, the jury, therefore, was able to assess their credibility and the potential impact the police conduct may have had on their testimony. Thus, the introduction of testimony from Antonio Jones, Janet Kendle, and Cathy Austin, did not violate Petitioner's constitutional rights.

### C. Sufficiency of the Evidence

In his second claim for habeas corpus relief, Petitioner claims that insufficient evidence was presented to sustain his first-degree felony murder conviction. Specifically, Petitioner claims no evidence was presented to show when the victim actually died, and no relationship was established between the homicide and the alleged kidnapping, which served as the underlying felony.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> To satisfy due process requirements, the prosecution must introduce sufficient evidence that defendant is guilty beyond a reasonable doubt. . . . A court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. . . . "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." People v. Nowack, 462 Mich. 392, 400; 614 N.W.2d 78 (2000). . . . The elements of a crime may be proven by circumstantial evidence and reasonable inferences from the evidence. People v. Jolly, 442 Mich. 458, 466; 502 N.W.2d 177 (1993).
>
> "[T]he elements of felony murder are: 1) the killing of a human being, 2) malice, and 3) the commission, attempted commission, or assisting in the commission of one of the felonies enumerated in the statute. . . ." People v. Carines, 460 Mich. 750, 768; 597 N.W.2d 130 (1999). "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." Id. at 759. "Malice may also be inferred from the use of a deadly weapon." Id. Kidnapping, the underlying offense in defendant's case, is enumerated in the felony murder statute. M.C.L. 750.316(1)(b).

> By participating in a kidnapping with a baseball bat and a gun, defendant set in motion events that would likely cause death or great bodily harm. Carines, *supra* at 760. Despite the alleged conduct of the police, the jury had the opportunity to judge the credibility of the witnesses and found defendant guilty. The jury heard testimony that defendant kidnapped a teenage boy, beat him with a baseball bat, drove around with him in the trunk of a car, and then left him for days tied up in a basement until the boy eventually died. This type of conduct unquestionably set in motion events that would likely cause death or great bodily harm. We therefore conclude that sufficient evidence was introduced to sustain defendant's felony murder conviction.

Watson, slip op. at 2.

The Court finds this well-reasoned disposition of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. While not citing Jackson, the Court of Appeals cited cases which clearly incorporated the Jackson standard. The Court of Appeals explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's factual findings a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals' decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### D. Alleged Prosecutorial Misconduct

Petitioner next claims that he is entitled to habeas corpus relief because the prosecutor engaged in misconduct. Specifically, Petitioner claims the prosecutor (i) improperly vouched for the credibility of witness Rynell Davis, (ii) denigrated defense counsel, and (iii) asked Petitioner to comment on credibility of prosecution witnesses.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were

so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting* Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

Id. at 964 (*quoting* Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982)).

First, Petitioner argues the prosecutor improperly vouched for Rynell Davis's credibility by emphasizing repeatedly that Mr. Davis was testifying pursuant to a plea agreement which required him to testify truthfully. The Michigan Court of Appeals held that the prosecutor's questions were not improper because the prosecutor "was merely emphasizing the truth of the matter – the witness entered into a plea agreement that was contingent on his telling the truth." Watson, slip op. at 3. Further, the state court held that "[t]he prosecutor was not suggesting special knowledge of the witness' truthfulness – the prosecutor's comments only explained the nature of the plea agreement and encouraged the jury to evaluate the witness' testimony." Id.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" U.S. v. Trujillo, 376 F.3d 593, 607 (6th Cir. 2004),

*quoting* U.S. v. Martinez, 253 F.3d 251, 253-54 (6th Cir. 2001). In Trujillo, the prosecutor asked one prosecution witness whether her plea agreement required her "truthful cooperation." Id. at 608. Another prosecution witness testified that her plea agreement required her to "tell the truth." Id. The Sixth Circuit Court of Appeals held that the prosecutor's questions to these two witnesses "merely encompassed the terms of [their] plea agreements which this Court has held to be permissible," and, therefore, did not amount to improper vouching. Id. at 609.

In this case, the prosecutor's examination of Davis merely asked Davis to confirm the terms of his plea agreement. Similarly, the prosecutor's closing statement also only emphasized the terms of the plea agreement without placing the prestige of the prosecutor's office behind the witness. Therefore, the state court's finding that the prosecutor did not engage in improper vouching was not contrary to or an unreasonable application of Supreme Court precedent.

Second, Petitioner claims that the prosecutor improperly denigrated defense counsel by suggesting that Petitioner and defense counsel attempted to conform Petitioner's testimony with that of Cathy Austin's, and stating that she wished she had the opportunity to cross-examine defense counsel. The Michigan Court of Appeals held that the prosecutor's conduct in this regard was not improper, stating, in pertinent part:

> Defendant . . . alleges that the prosecutor denigrated the defense. A prosecutor cannot suggest that defense counsel is intentionally trying to mislead the jury and cannot personally attack a defendant's attorney. . . . [I]t does not denigrate the defendant or the defense when the prosecution argues that a defendant's presence at trial gave the defendant the opportunity to conform his testimony with the testimony of other witnesses. . . .
>
> [T]he prosecutor's questioning of defendant regarding defendant's former girlfriend's statements were permissible. . . . The prosecutor merely asked defendant about his access to witness statements before taking the stand to present his alibi, a permissible area of inquiry. . . . Additionally, the prosecutor's comments about wanting to cross-examine defense counsel did not denigrate the defense; it followed

11

> the prosecutor's comment that she did not know which statements defendant had access to. The prosecutor was not attacking defense counsel's credibility or arguing that defense counsel was intentionally trying to mislead the jury, but was properly questioning defendant's credibility. . . .

Watson, slip op. at 3.

The United States Supreme Court has held that a prosecutor may properly comment that a defendant had the opportunity to hear all other witnesses testify before he was called to testify and that he therefore could tailor his own testimony accordingly. Portuondo v. Agard, 529 U.S. 61 (2000). The Supreme Court held, in pertinent part:

> [W]e see no reason to depart from the practice of treating testifying defendants the same as other witnesses. A witness's ability to hear prior testimony and to tailor his account accordingly, and the threat that ability presents to the integrity of the trial, are no different when it is the defendant doing the listening. Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate – and, indeed, given the inability to sequester the defendant, sometimes essential – to the central function of the trial, which is to discover the truth.

Id. at 1127.

Thus, given that the Supreme Court has given its imprimatur to the type of argument made by the prosecutor in this case, Petitioner is not entitled to habeas corpus relief with respect to this claim.

Finally, Petitioner claims that the prosecutor engaged in misconduct by asking him to comment on prosecution witnesses' credibility. The Michigan Court of Appeals held that the prosecutor did not ask Petitioner to comment on the witnesses' credibility but, instead, asked whether Petitioner knew of any motivations witnesses would have to fabricate their testimony. Petitioner has failed to show that this conclusion was contrary to or an unreasonable application of Supreme Court precedent.

### E. Alleged Ineffective Assistance of Trial Counsel

Finally, Petitioner claims that he is entitled to issuance of a writ of habeas corpus because his attorney was ineffective. Petitioner charges that his attorney should have objected when the prosecutor improperly vouched for the credibility of witness Rynell Davis.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The Michigan Court of Appeals held that the prosecutor did not improperly vouch for Mr. Davis's credibility. Petitioner failed to show that the state court's conclusion was contrary to or an unreasonable application of Supreme Court precedent. Thus, the Court concludes that counsel was not ineffective in failing to object to proper prosecutorial conduct.

### IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

                                              s/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              UNITED STATES DISTRICT JUDGE

Dated: May 11, 2006

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 11, 2006.

                                              s/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290